**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VON ERICKSON LABORATORIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, *et al.*,<br><br>Defendants. | No. 24cv9316 (EP) (SDA)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Von Erickson Laboratories LLC ("Von Erickson") sells a red necklace designed to resemble dripping blood and holds a registered copyright in its design. Von Erickson alleges that Defendants Target Corporation, Target Stores, Inc., and Target Brands, Inc. (collectively, "Target") and Ballet Group, Inc. ("Ballet," together with Target, "Defendants") infringed that copyright by selling a similar necklace as Halloween costume jewelry. Von Erickson now moves for summary judgment on liability, willfulness, and statutory damages. D.E. 49-1 ("Motion" or "Mot.").[1] Defendants oppose. D.E. 61 ("Opp'n"). Von Erickson replied. D.E. 64 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

Because there are genuine issues of material fact in this case, as explained below, the Court will **DENY** the Motion.

[1] Von Erickson filed its Notice of Motion at D.E. 49.

# I. BACKGROUND[2]

## A. The Registered Necklace

Peter Erickson has designed and sold jewelry since 1993. PSUF ¶ 6. He began doing business as "Von Erickson" in 2009 and in 2013 formed Von Erickson Laboratories LLC, a New York limited liability company. *Id.* ¶¶ 7–8. In 2009, Erickson created the Large Blood Drip Necklace (the "Registered Necklace"). *Id.* ¶ 11. Erickson created the Registered Necklace by hand, built paper models, and devised an adjustable "loop and belt" closure. *Id.* ¶ 12.

The Registered Necklace is registered with the United States Copyright Office. *Id.* ¶ 9. Registration No. VA 1-832-450, effective October 15, 2012, covers the work, which was first published on June 19, 2009. *Id.* Supplementary Registration No. VA 1-433-345, effective July 17, 2013, covers the same work. *Id.* ¶ 10. Erickson assigned the Registered Necklace's copyright to his company, Von Erickson, on May 21, 2013, and the assignment was recorded with the Copyright Office on July 15, 2013. *Id.* ¶¶ 23–24.

Von Erickson sells its jewelry—including the Registered Necklace—direct to consumers online. *Id.* ¶ 15. Von Erickson opened an Etsy store in April 2009 and created a website to sell its work two months later. *Id.* ¶¶ 18–19, 22. It made its first Etsy sale of the Registered Necklace on June 8, 2009. *Id.* Also in June 2009, Von Erickson displayed and sold the Registered Necklace at the Fangoria trade show in New York City. *Id.* ¶ 25. Online articles in 2009 and 2010 and an April 2009 blog post featured the Registered Necklace's design. *Id.* ¶¶ 26–27. Von Erickson claims it has sold "thousands" of Registered Necklaces since 2009 at around $16 to $18 each. *Id.* ¶¶ 17, 28.

---

[2] The facts in this Section and throughout this Memorandum Order are undisputed unless otherwise indicated and are drawn from (1) Plaintiff's Statement of Undisputed Material Facts, D.E. 73 ("PSUF"); (2) Defendants' Response to Plaintiff's SUF, D.E. 62 ("Defendants' Response" or "D. Resp."); and (3) Plaintiff's reply to Defendants' Response, D.E. 64-1 ("SUF Reply").

**B. The Parties' Prior Dispute**

In September 2016, Von Erickson sent Target a letter notifying it of Von Erickson's copyright in the Registered Necklace. *Id.* ¶ 32. The letter identified Registration No. VA 1-832-450, attached the registration certificate and images comparing the Registered Necklace to a product Target was then selling, asserted that Target's product was an exact copy, and demanded an accounting of Target's sales and profits. D.E. 50-16, Ex. Q. Target acknowledged the letter in October 2016 and stated it had begun investigating Von Erickson's allegations. PSUF ¶ 33; D.E. 50-17, Ex. R.

Von Erickson sued Target in June 2017. Its complaint in *Von Erickson Laboratories LLC v. Amscan Holdings, Inc.*, No. 17-03916 (D.N.J. filed June 1, 2017) (the "2017 Action"), alleged infringement of the Registered Necklace—the same issue here. Von Erickson named Target and Almar Sales Company, Inc. ("Almar"), Target's distributor, among the defendants. *See* D.E. 65-2. The product accused of infringement in the 2017 Action was different from the one in this case, was produced by Almar, and was sold in Target stores. SUF Reply ¶ 69. Almar defended the 2017 Action and indemnified Target. *Id.* ¶ 70.

The 2017 Action ended with a settlement agreement reached in June 2018. PSUF ¶ 35. Almar signed as Target's indemnitor, but Target did not sign the settlement agreement. *Id.*; SUF Reply ¶ 73. Almar agreed to refrain from selling, importing, marketing, distributing, or advertising products infringing Von Erickson's "original design" of the Registered Necklace. PSUF ¶ 36. The settlement agreement was a compromise of disputed claims, stating that Almar

admitted no liability, and that Almar admitted no infringement or wrongful act. D.E. 62 ¶¶ 74–75; D.E. 64-1 ¶¶ 74–75. Target was dismissed from the 2017 Action with prejudice.[3]

**C. The Accused Necklace**

The necklace at issue here reached Target through its supplier, Ballet. Target and Ballet both sell costume jewelry. PSUF ¶ 5. Ballet supplies such jewelry to major retailers, including Target. *Id.* Starting in 2021, Target sold a package of three choker necklaces (the "Three-Pack"). *Id.* ¶¶ 39–40; D.E. 50-18, Ex. T. One of the three chokers is a red necklace with blood-like drops (the "Accused Necklace") (the Registered Necklace and Accused Necklace collectively, the "Necklaces"). PSUF ¶¶ 39, 50; D.E. 50-18, Ex. T. According to Von Erickson, the Accused Necklace infringes on the Registered Necklace's copyright. PSUF ¶¶ 39, 50. The back of the Three-Pack packaging states it was "distributed by Target Corporation." *Id.* ¶ 40.

Through two purchase orders, Ballet bought 20,304 units of the Three-Pack from supplier CAP Fashion and sold them to Target.[4] *Id.* ¶¶ 49–52, 56, 61. Target displayed and sold the Three-Pack in stores and on its website from August 2021 until at least June 2023. *Id.* ¶ 37. According to Target's records, it sold 16,640 Three-Packs, generating $94,079 in revenue. *Id.* ¶¶ 44–45. Ballet stated in an interrogatory answer that Nicole Bran, a Ballet employee, developed the concept for the Accused Necklace in late 2020 or early 2021, discussed it with Target, and obtained Target's approval for production. D.E. 65-4, Ex. 16.

---

[3] 2017 Action, D.E. 35. The Court takes judicial notice of the 2017 Action's docket for the disposition, not for the truth of any allegation in that case. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

[4] It is unclear when the purchase orders were made. The parties describe the two orders by quantity and unit cost, PSUF ¶¶ 51–53, 56–57, and Ballet converted its aggregate cost using a March 1, 2021, exchange rate from Chinese RMB to U.S. dollars, *id.* ¶ 61, but no party asserts when either order was placed. The March 2021 dates that appear elsewhere in the record are entry dates on Target's orders to Ballet, not on Ballet's orders to CAP Fashion.

Von Erickson learned of Target's sales in September or October 2021, PSUF ¶ 38, and learned in November 2024 that Ballet was the Accused Necklace's distributor and indemnitor, *id.* ¶ 48. Von Erickson submitted the side-by-side image below of the Accused Necklace (top) and the Registered Necklace (bottom):



PSUF ¶ 41; D. Resp. ¶ 41; SUF Reply ¶ 41.[5]

**D. Procedural History**

In 2024, Von Erickson sued Target in this action and later amended its complaint to add Ballet. D.E. 28 ("Amended Complaint" or "Am. Compl."). The Amended Complaint pleads a single count of copyright infringement and seeks statutory damages of up to $150,000 per infringement, together with costs and attorneys' fees. *Id.* ¶¶ 39–40. Both Defendants answered and demanded a jury trial. D.E. 29; D.E. 36. Ballet's answer pleads, among other defenses, that

[5] Defendants deny this paragraph without citing record evidence or stating a basis, D. Resp. ¶ 41, offering instead two images that defense counsel states he created in Adobe Photoshop, SUF Reply ¶¶ 66–67. Von Erickson objects to the two Adobe-created images as unauthenticated. SUF Reply ¶¶ 66–67. The Court reproduces Von Erickson's image because the photographer authenticates it by declaration, D.E. 50 ¶ 30, Ex. U, while Defendants' images include no foundation and are unaccompanied by any record citation. *See* Fed. R. Civ. P. 56(c)(1)(A), (e)(2); L. Civ. R. 56.1(a). The Court need not resolve the authentication objection. Because Von Erickson is the movant, the Court views this image in the light most favorable to Defendants. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

its design "was independently created and not copied from Plaintiff's design," and that Von Erickson's claims against it are untimely. D.E. 36 at 4–5. Von Erickson moved for summary judgment on February 6, 2026. Mot. The Motion is fully briefed and ready for decision.

## II. LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party would bear the burden of proof at trial, summary judgment is inappropriate "unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law," and "real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" defeat a summary judgment motion. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237–38 (3d Cir. 2007).

If the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine

dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Under Rule 56, a court must view the evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002), as are unsworn statements in memoranda and unsupported statements in pleadings, *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Indeed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citation modified). "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Marcangelo v. Boardwalk Regency Corp.*, 847 F. Supp. 1222, 1226 (D.N.J. 1994) (quoting *Anderson*, 477 U.S. at 248).

## III. ANALYSIS

To establish a claim of copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of original elements of the plaintiff's work. *Am. Soc'y for Testing & Materials v. UpCodes, Inc.*, 172 F.4th 253, 260 (3d Cir. 2026). The second element—unauthorized copying—consists of "two (frequently conflated) components: actual copying and material appropriation of the copyrighted work." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018). Actual copying occurs when a defendant "did, in fact, use the copyrighted work in creating" the allegedly infringing work. *Id.* at 173–74. Material appropriation occurs when a defendant's

work is substantially similar to the protected elements of the copyrighted work such that "a lay observer would believe that the copying was of protectible aspects of the copyrighted work." *Id.* at 174 (citation modified).

Moreover, "[t]wo works can be 'substantially similar' so as to support an inference of copying, yet not 'substantially similar' in the sense that the later work materially appropriates the copyrighted work." *Id.* at 173 (quoting *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975)). Whether two works are substantially similar—either for the copying or the appropriation element—"is usually an extremely close question of fact," so "summary judgment has traditionally been disfavored in copyright litigation." *Id.* at 171 (citing *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 n.6 (9th Cir. 1983)). Because the plaintiff must prove substantial similarity between the works at trial, it can prevail at summary judgment only by showing that "no reasonable jury could find for" defendants on "all the essential elements" of a copyright claim. *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)); *see also El*, 479 F.3d at 238 (framing the same standard as whether "a reasonable juror would be *compelled* to find [the movant's] way on the facts needed to rule in its favor on the law" (emphasis added)).

Von Erickson has established ownership of the Registered Necklace's copyright. It has not, however, established copying as a matter of law. On this record, whether Defendants actually copied the Registered Necklace is a question a reasonable jury could answer either way. And Von Erickson's remaining requests—a finding of willfulness, a statutory award, and a declaration as the prevailing party—all depend on copyright liability that has not been established. The Court will therefore **DENY** the Motion.

### A. Copyright Ownership Is Established

The first element of a copyright claim examines copyright ownership. *UpCodes*, 172 F.4th at 260. A certificate of registration made "before or within five years after first publication of the work" is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Once a certificate of registration is presented, the burden shifts to the defendant to show evidence rebutting the registration's validity. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290–91 (3d Cir. 1991).

Here, the copyrighted work was registered under No. VA 1-832-450 and became effective on October 15, 2012—within five years of the Registered Necklace's first publication on June 19, 2009. PSUF ¶¶ 9–10, 12, 23–24. A timely registration is prima facie evidence of the validity of the copyright and the facts stated in the certificate. 17 U.S.C. § 410(c); *Ottomanson, Inc. v. Ameritu Trading, Inc.*, No. 21-12177, 2025 WL 3749533, at *3 (D.N.J. Dec. 29, 2025). Defendants do not dispute the registration, the supplementary registration, the assignment, or its recordation. D. Resp. ¶¶ 9–10, 12, 23–24. And while Defendants do not contest that Von Erickson holds a certificate for the Registered Necklace, they do note that the record is unclear as to *which* sample of the necklace was deposited for registration. Opp'n at 8–10. An alleged lack of clarity over which necklace was deposited for registration is not rebuttal evidence, however, so the presumption of validity stands unrebutted. 17 U.S.C. § 410(c).

Thus, no reasonable jury could find that Von Erickson does not own a valid copyright in the Registered Necklace. Where the court "does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treat[] that fact as established in the case." Fed. R. Civ. P. 56(g). The Court will therefore treat the Registered Necklace's registration, creation, assignment, recordation, and ownership facts as established.[6]

[6] Establishing that Von Erickson owns a valid copyright does not establish which features of the Registered Necklace are protectable expression. *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207–08 (3d Cir. 2005). A valid copyright requires only that the work contain some original

### B. Whether There Is Actual Copying Is a Jury Question

Actual copying focuses on whether Defendants in fact used the Registered Necklace in creating the Accused Necklace. *Tanksley*, 902 F.3d at 173. If Defendants created the Accused Necklace independently, however, "then no infringement has occurred, irrespective of similarity." *Id.* at 173. "Courts have generally allowed plaintiffs to prove actual copying in three ways: (1) direct evidence of copying[7]; (2) proof of access to the copyrighted work and probative similarity between the works; and (3) proof that the works are strikingly similar." *Am. Bd. of Internal Med. v. Rushford*, No. 24-3012, 2026 WL 125193, at *4 (3d Cir. Jan. 16, 2026) (citations omitted).

#### i. *Access and probative similarity*

Von Erickson can prove actual copying by establishing that Defendants (1) "had access to" the Registered Necklace and that (2) there is a "probative similarity" between the Registered Necklace and the Accused Necklace. *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 561 (3d Cir. 2002). Von Erickson fails to establish both access and probative similarity.

Access requires "a reasonable possibility—not simply a bare possibility"—that the alleged infringer viewed the protected work. *Bruzzese v. Passages Int'l, Inc.*, No. 23-23047, 2025 WL 1779217, at *7 (D.N.J. June 27, 2025) (noting that access "cannot be based on mere speculation or conjecture"). Access can be inferred by indirect evidence showing such a "reasonable possibility of access." *Rushford*, 2026 WL 125193, at *5 (citing *Gaste v. Kaiserman*, 863 F.2d

---

expression. Which elements of the work a lay observer may consider in assessing substantial similarity is a separate question and is part of the material appropriation inquiry. *See Tanksley*, 902 F.3d at 173.

[7] Von Erickson does not provide any direct evidence of actual copying and instead relies on circumstantial evidence. *See* PSUF. Accordingly, the Court only addresses the latter two circumstantial evidence-based theories of copyright infringement.

1061, 1066 (2d Cir. 1988)). Von Erickson must provide sufficient evidence that would "compel" a juror to find that Defendants had access to the Registered Necklace. *El*, 479 F.3d at 238.

Von Erickson argues that the Registered Necklace was widely disseminated, which provided Defendants access. Mot. at 7. In support of this argument, Von Erickson points to over a decade of online availability before the Accused Necklace was developed, a 2009 trade show where the Registered Necklace was displayed, and the Registered Necklace's sales history. PSUF ¶¶ 17–19, 22, 25–27. This evidence *permits* an inference that the Registered Necklace was circulated where jewelry designers like Defendants may have encountered it. But it does not "compel" that inference. *El*, 479 F.3d at 238. Von Erickson does not provide website analytics, communications, or testimony placing the Registered Necklace before Target, Ballet, Bran (Ballet's employee), or CAP Fashion (Ballet's supplier of the Three-Pack). Opp'n at 28. In short, Von Erickson presents sufficient evidence to permit a finding of access—but it does not reach the necessary threshold to compel that finding.

The parties also contest the scale of the Registered Necklace's circulation. Defendants maintain that Von Erickson's records reflect no more than 1,061 units sold between 2011 and 2024, D. Resp. ¶ 78, which Von Erickson disputes as an unverifiable count prepared by defense counsel, SUF Reply ¶ 78. Whether Defendants' estimation of the number of units sold afforded Defendants a reasonable opportunity to see the design—rather than a bare possibility—is a question for the jury. *See O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) (denying a copyright plaintiff partial summary judgment where the work's availability on the internet was "insufficient by itself to demonstrate wide dissemination"); *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1144–45 (9th Cir. 2009) (affirming judgment for the accused

infringer of copyrighted shirts where a website, county fair booth displays, and roughly 2,000 shirts sold per year could not show access).

In Reply, Von Erickson advances a second theory of access. It argues that Target learned of the Registered Necklace through the 2017 Action, whose complaint attached photographs of the design, and that Target then served as a conduit to Ballet of the Registered Necklace's design during the Accused Necklace's development. Reply at 6–7; *Rushford*, 2026 WL 125193, at *5 (explaining that a plaintiff can prove access through a third party "connected to both a plaintiff and a defendant"). But a reply brief "should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998). Put simply, a reply is not a vehicle for new arguments. *Id.*; *see Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief). Von Erickson's theory and its supporting evidence first appear in Reply, and Defendants have had no opportunity to respond. Indeed, Von Erickson's opening brief recited the parties' prior dealings and the 2017 Action but leveraged them only in support of willfulness, Mot. at 12–13, and the Court considers them in that context. The Court therefore does not consider the conduit theory as a basis for access.[8]

---

[8] Regardless, the conduit theory would not compel a finding of access. The only evidence Von Erickson offers in arguing that Ballet learned of the Registered Necklace through Target is Ballet's answer to Interrogatory No. 5, which states that Bran, a Ballet employee, developed the concept for the product, discussed it with Target, and later obtained Target's approval. D.E. 65-4, Ex. 16. The answer to Interrogatory No. 5 does not state that the Registered Necklace was used in any way in creating the Accused Necklace and identifies no image, sample, or description of the Registered Necklace in that process. Accordingly, a jury could find that Bran created the design for the Accused Necklace independently, which would mean that "no infringement occurred, irrespective of similarity." *Tanksley*, 902 F.3d at 173 (citation modified).

Access and probative similarity together could permit a factfinder to infer that Defendants used the Registered Necklace in creating the Accused Necklace. *Bruzzese*, 2025 WL 1779217, at *7. Because access is a jury question, however, the Court need not decide whether there is a probative similarity between the Necklaces.

*ii. Striking similarity*

Von Erickson tries to establish actual copying through the third method, which requires "proof that the works are strikingly similar." *Rushford*, 2026 WL 125193, at *4; Mot. at 9–10. "The striking similarity doctrine permits an inference of access in cases where the two works in question are so similar as to create a high probability of copying and negate the reasonable possibility of independent creation." *Rushford*, 2026 WL 125193, at *4 (citation modified). Several circuits have adopted the striking similarity doctrine, some treating striking similarity as proof of copying without any showing of access. *Id.* But the Third Circuit "has neither accepted nor rejected the striking similarity doctrine," and outside that doctrine it "will not use proof of one element to infer the existence of the other." *Id.* The Court need not decide whether to adopt or apply the striking similarity doctrine because Von Erickson would not be entitled to summary judgment even if the doctrine applied.

The striking similarity doctrine is demanding. The similarity must be great enough to "negate the reasonable possibility of independent creation." *Id.* at *4. As Defendants point out, the striking similarity doctrine is a higher bar than substantial similarity. Opp'n at 15. Because Von Erickson bears the burden of proof, it must show that a reasonable jury would be compelled to find the Necklaces strikingly similar. *See Bressman*, 327 F.3d at 238.

Von Erickson cannot make that showing on this record because of the parties' competing descriptions of the Necklaces. Von Erickson describes them as "nearly identical." Mot. at 9–10.

Defendants identify differences in the shape, length, width, spacing, sharpness, and thickness of the drips, and contend that the necklace Von Erickson sells differs from the Registered Necklace. Opp'n at 3, 13. Both descriptions concern the drips themselves, which both parties treat as the defining feature of the Necklaces. The differences Defendants identify bear on striking similarity. A reasonable jury crediting Defendants' description of the Necklaces could find that the similarities between them do not "negate the reasonable possibility of independent creation." *Rushford*, 2026 WL 125193, at *4. Von Erickson has therefore not established striking similarity between the Necklaces as a matter of law.

Accordingly, whether Defendants actually copied the Registered Necklace is a question for the jury. That alone defeats the Motion. Von Erickson must prove both components of unauthorized copying to establish infringement, *Tanksley*, 902 F.3d at 173, and as the movant bearing the burden of proof, it must show that no reasonable jury could find against it on either component, *see Bressman*, 327 F.3d at 238. Because Von Erickson has not established actual copying as a matter of law, the Court does not decide whether the Accused Necklace materially appropriates the protected expression of the Registered Necklace. The Court will therefore **DENY** summary judgment on Von Erickson's infringement claim.

### C. Willfulness Cannot Be Decided as a Matter of Law

Von Erickson asks the Court to find that Defendants' infringement was willful, relying on the 2017 Action, Defendants' sophistication, and their conduct in this litigation. Mot. at 12–15. Willfulness in the copyright context allows for enhanced statutory awards "where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully." 17 U.S.C. § 504(c)(2). Willfulness describes the infringer's state of mind toward the infringement. *Stockfood Am.*, 475 F. Supp. 3d 394, 411–13 (D.N.J. 2020). A plaintiff must show

that the defendant "was actually aware of the infringing activity," or acted with "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *Id.* at 412.

Even assuming infringement, which Von Erickson has not established, the record does not compel a finding that either Defendant acted willfully. Indeed, the 2017 Action and Defendants' sophistication may support an inference of knowledge, but they also do not compel a finding that Defendants were actually aware the Accused Necklace infringed on the Registered Necklace—much less recklessly disregarded or were willfully blind to that infringement. Defendants deny copying, and Ballet asserts that its design was independently created. D.E. 36 at 4–5; *see* D.E. 65-4, Ex. 16. Those facts leave a genuine dispute concerning Defendants' state of mind. *See Stockfood Am.,* 475 F. Supp. 3d at 413 (denying summary judgment on willfulness where conflicting evidence created a genuine dispute concerning the defendant's state of mind). Accordingly, the Court will **DENY** the Motion as to willful infringement.

**D. Any Statutory Award Decision Belongs to the Jury**

Von Erickson also asks the Court to (1) award statutory damages of $150,000 against Target and $50,000 against Ballet, and (2) declare Von Erickson the prevailing party. Mot. at 15–20, 29. Both requests depend on Defendants' liability for copyright infringement and are therefore denied because Von Erickson has not established as a matter of law that Defendants infringed on the Registered Necklace's copyright. *See IQ Grp., Ltd. v. Wiesner Publ'g, LLC*, 409 F. Supp. 2d 587, 590–91 (D.N.J. 2006) (denying plaintiff's summary judgment requests for statutory damages and for enhanced damages for willful infringement because entitlement to statutory damages "require[s], as a predicate, a determination of copyright infringement"). The Seventh Amendment provides a right to a jury trial "on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998).

Prevailing party status likewise depends on judgment on copyright infringement. *See* 17 U.S.C. § 505. Accordingly, the Court will **DENY** the Motion as to statutory damages and prevailing party status.[9]

## IV. CONCLUSION & ORDER

For the foregoing reasons,

**IT IS**, on this **18th** day of September 2026,

**ORDERED** that Von Erickson's Motion for Summary Judgment, D.E. 49, is **DENIED**; and it is further

**ORDERED** that under Federal Rule of Civil Procedure 56(g), the following facts are established in this action: (1) Peter Erickson created the Registered Necklace in 2009; (2) Registration No. VA 1-832-450, effective October 15, 2012, identifies June 19, 2009, as the Registered Necklace's date of publication; (3) Supplementary Registration No. VA 1-433-345 became effective on July 17, 2013; (4) Erickson assigned the copyright to Von Erickson on May 21, 2013; (5) the assignment was recorded with the Copyright Office on July 15, 2013; and (6) Von Erickson owns a valid copyright in the Registered Necklace; and it is finally

**ORDERED** that the parties are referred to mediation pursuant to Local Civil Rule 301.1 and shall contact the chambers of Hon. Stacey D. Adams, U.S.M.J., within 30 days of this Order.

Evelyn Padin

Evelyn Padin, U.S.D.J.

[9] Defendants argue in Opposition that the claims against Ballet are untimely under 17 U.S.C. § 507(b) because Ballet sold the Accused Necklace to Target in March 2021 and was not added as a defendant until April 2025. Opp'n at 30. Von Erickson responds that its claim against Ballet did not accrue until it discovered Ballet's role in November 2024. Reply at 11–12. No party has moved for judgment on that defense, and the denial of the Motion does not depend on it. The Court therefore does not decide when Von Erickson's claim against Ballet accrued.